**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DARIUS RUSH,

      Petitioner,            Case Number 2:20-CV-11540
                               HONORABLE DENISE PAGE HOOD

v.

ADAM DOUGLAS,[1]

      Respondent.
_____/

## OPINION AND ORDER GRANTING
## THE PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner, Darius Rush, both *pro se* and through attorneys Christopher J. McGrath of the Federal Defender's Office and later Carole M. Stanyer, seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction for first-degree home invasion, MCL 750.110a(2), conspiracy to commit first-degree home invasion, MCL 750.110a(2) and MCL 750.157a, and receiving and concealing stolen property, MCL 750.535(5).  He was originally sentenced as a third habitual offender, MCL 769.11, to 217 months to 40 years' imprisonment for the first-degree home invasion, and 87 to 40 years imprisonment for the conspiracy to commit home invasion conviction. The trial court ordered that the two sentences be

---

[1]  The Court amends the caption to reflect the custodian where petitioner is incarcerated.

served consecutively to one another. Defendant received time served for the receiving and concealing conviction. Petitioner was later resentenced to 7 years 3 months to 20 years on the conspiracy to commit first-degree home invasion and 12 years 1 month to 20 years on the first-degree home invasion. For the reasons that follow, the Court GRANTS the petition for a writ of habeas corpus.

## I.  Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Darnell [Rush] is Darius's uncle. The various charges stem from a January 9, 2012, robbery that they committed with two other men, Desmond Robinson and Deandre Cannady. As part of a plea agreement, Cannady testified that the four men went to the 80–year–old victim's house in order to rob him. They approached the victim under the guise that they were interested in buying his car. Darnell pushed the victim into the house through the open doorway and held a small metal blade to the victim's neck while the other three men entered the victim's house and stole items from the victim's person and his house. In their respective statements to the police, both Darnell and Darius admitted to their involvement in the robbery. They were convicted and sentenced as outlined above and now appeal as of right.

2

*People v. Rush*, No. 312055, 2014 WL 1515270, at *1 (Mich. Ct. App. Apr. 17, 2014).

Petitioner's conviction was affirmed on appeal, although his case was remanded for re-sentencing. *Id.*

On remand, the trial court resentenced petitioner to lower sentences for each crime, but those sentences were to be served consecutively. *People v. Rush*, No. 325194, 2016 WL 1680742, at *1, 2–5 (Mich. Ct. App. Apr. 26, 2016). The Michigan Court of Appeals held that petitioner was again entitled to remand because of an error in calculating time served and due to judicial factfinding during sentencing. *Id.*

On remand, the trial court sentenced petitioner to its previously entered sentence of 12 years, 1 month-to-20 years for the home-invasion conviction and 7 years, 3 months-to-20 years for the conspiracy conviction to be served consecutively. *People v. Rush*, No. 334740, 2018 WL 1020305, at *1 (Mich. Ct. App. Feb. 22, 2018).

Petitioner did not appeal any of the Michigan Court of Appeals cases to the Michigan Supreme Court. *See* Affidavits of Larry Royster, Clerk of the Michigan Supreme Court, dated August 26, 2020. (ECF Nos. 18-10, 18-12, 18-15).

3

Petitioner filed a post-conviction motion for relief from judgment with the trial court.  Petitioner raised for the first time his claim that he was constructively denied the assistance of trial counsel because of his trial counsel's failure to challenge the prosecutor's case in any meaningful way. Petitioner also argued that appellate counsel was ineffective for failing to raise this claim on his appeal of right.  Petitioner requested an evidentiary hearing on his claims.  The trial judge denied the motion, in part because petitioner failed to show cause and prejudice under M.C.R. 6.508(D)(3) for not raising these claims on his appeal of right, and in part because petitioner failed to show that counsel's inactions were ineffective assistance of counsel within the meaning of *Strickland v. Washington,* 466 U.S. 688 (1984). Significantly, the judge never addressed petitioner's constructive denial of counsel claim. *People v. Rush,* No. 12-001081-FC (Wayne County Circuit Court Feb. 4, 2019)(ECF No. 18-16, PageID.2252-60).

The Michigan Court of Appeals denied petitioner leave to appeal on the ground that petitioner failed to establish that the trial court erred in denying the motion for relief from judgment. *People v. Rush,* No. 349890 (Mich. Ct. App. Sept. 23, 2019)(ECF No. 18-16, PageID.2212).

4

The Michigan Supreme Court denied petitioner leave to appeal pursuant to M.C.R. 6.508(D). *People v. Rush*, 505 Mich. 1040, 941 N.W.2d 663 (2020).

Petitioner filed a *pro se* petition for a writ of habeas corpus. (ECF No. 1). Petitioner later filed an amended petition for a writ of habeas corpus. (ECF No. 10). This Court granted the motion to amend. (ECF No. 12). Respondent filed an answer. (ECF No. 17).

This Court granted petitioner's motion for an evidentiary hearing and appointed the Federal Defender's Office to represent him. *Rush v. Winn*, No. 2:20-CV-11540, 2021 WL 1904498 (E.D. Mich. May 12, 2021).

Christopher J. McGrath of the Federal Defender's Office filed a supplemental brief. (ECF No. 30). Respondent filed an answer to the supplemental brief. (ECF No. 32).

This Court subsequently granted counsel's motion to withdraw. (ECF No. 36).  Ms. Stanyer was appointed as substitute counsel.

The evidentiary hearing was conducted on August 24, 2022.  Ms. Stanyer represented petitioner at the hearing. (ECF No. 46).

Petitioner testified at the evidentiary hearing that on the date of the offenses charged, he attempted to get a ride to Auto Zone to purchase parts to fix his car.  Desmond Robinson agreed to drive him.  Petitioner rode his

5

bike to Beaconsfield Street where Robinson was living.  The men stopped at a gas station where petitioner paid for the gas.  Robinson received a phone call and informed petitioner that he could not drive Rush to Auto Zone because someone wanted to pay Robinson a couple hundred dollars to do something for them. Petitioner returned on his bike to his own house.  Later that morning, at approximately 11:30 a.m., Robinson called petitioner and informed him that he had cash to repay petitioner for the gas.  Petitioner rode his bike to Robinson's house, where Robinson paid back the gas money and asked petitioner if he wanted to buy some jewelry. (ECF No. 46, PageID.2698-2704).

Petitioner's cousin, Christopher Alexander, and his uncle, Darnell Rush, agreed to drive petitioner to the pawn shop on Mack and University in Grosse Pointe, where petitioner pawned the jewelry. Before leaving that vicinity, Darius Rush broke into a white car and stole an iPhone. (*Id.*, PageID.2697, 2703-04).

Petitioner was arrested at his home by Detroit Police on January 14, 2012 and transported to the Ninth Precinct where he was interrogated. Petitioner testified that Detective Cregg Hughes asked him about an incident outside the pawn shop on January 9th. Petitioner denied involvement. Detective Hughes asked petitioner if he knew Darnell Rush, Desmond

Robinson, and Deandre Cannady.  Petitioner replied affirmatively.  Hughes told petitioner that the three men implicated him in a home invasion and robbery.   Petitioner again denied involvement. (*Id.*, PageID.2705-06). Hughes gave petitioner a standard Detroit Police Department written constitutional rights form.  Petitioner believed that by initialing and signing the form, he was "asserting" his right to an attorney. (*Id.*, PageID.2707. Petitioner has only a 9th grade education. (*Id.*, PageID.2712).  Petitioner did not believe that he was waiving his rights.  Petitioner also verbally asked for an attorney. (*Id.*, PageID.2705-07, *see also* Petitioner's Affidavit (ECF No. 1, Page ID 28).

Petitioner testified that instead of respecting his request for an attorney, Detective Hughes brought Darnell Rush into the interrogation room, ordered him to "get your nephew talking" and left him alone with petitioner. (*Id*.; Page ID 2707). When the detective and Darnell Rush entered the room petitioner said, "Look, I don't know what you want or what you trying to do, but I'm not trying to talk to neither one of y'all." (*Id.*).  Petitioner testified that after Detective Hughes left the interrogation room, Darnell was very "hyped up," and he threatened to "beat the shit" out of petitioner if he "didn't start telling these people what they want to hear ..."  Petitioner described his uncle as a person who is "prone to violence" and who becomes violent if he doesn't

"get his own way."  Darnell told petitioner that if they both admitted to the home invasion, Darnell would be the beneficiary of a deal with the prosecutors.  If not, Darnell would be serving "25 years to life" because he had a serious criminal history which included a prior conviction for armed robbery. (*Id.*, PageID.2708-2711). In addition to threatening petitioner, Darnell Rush promised petitioner that he would only get probation because home invasion "ain't nothin but a little minor offense."  Petitioner testified that he believed his uncle because petitioner received probation after pleading to a home invasion in the past. (*Id.*, PageID.2711).  Petitioner testified that he signed and initialed a statement about the home invasion on Ashland Street not because it was true, but because of what Darnell Rush had said and done to him.  Petitioner claimed that he did not read the statement before signing it, and that he did not really know what the statement said until he read a transcript of Detective Hughes' testimony after his trial. (*Id.*, PageID.2712-13).  At trial, Detective Hughes did not deny that he placed Darnell Rush in a room alone with petitioner. (*Id.*, PageID.2717). Neither Detective Hughes nor Darnell Rush testified at the evidentiary hearing before this Court.

Petitioner testified that he first met his assigned counsel, Brian Gagniuk, on the date set for the preliminary examination.  Petitioner informed

Gagniuk about the circumstances that led to him giving a statement. (*Id.*, PageID.2714). Gagniuk promised petitioner that "he could get it [the statement] thrown out", and that he would "check into it."  By the next court date, Gagniuk said to Rush "[w]ell, they're not going to suppress" the statement.  Petitioner told his attorney that he was innocent of these crimes. (*Id.*, PageID.2716-2717).  Petitioner testified that his attorney advised him to waive his preliminary examination because armed robbery carried a maximum of life in prison. Petitioner Rush claims that he told Gagniuk about his alibi witnesses and that his attorney promised to do a follow up investigation.  At trial, Gagniuk did not put petitioner on the witness stand or cross- examine a single witness.  Most importantly, Gagniuk conceded to jurors that petitioner was guilty of the home invasion.  Petitioner's recollection was that his attorney informed him that he could not testify at trial because he had waived his preliminary examination. (*Id*., PageID.2717).  Petitioner never told Mr. Gagniuk to concede his guilt on the home invasion charge. Petitioner testified he went to trial to seek a not guilty verdict. (*Id.*, PageID.2718).

Brian Gagniuk testified that he typically carries 70-plus cases on his docket any given day, and that he represents hundreds of criminal defendants every year in Wayne County Circuit Court. (*Id*., Page ID.2659,

9

2670).  Mr. Gagniuk could remember very little about petitioner's case, trying to refresh his recollection from the Wayne County Circuit Court docket and the sentencing transcript. (*Id.*, PageID.2658-60).   Mr. Gagniuk could not recall any specific discussions with petitioner about the decision to waive the preliminary examination, about the motions petitioner wanted him to file, or about the circumstances surrounding the interrogation. (*Id.,* PageID.2659-2661). Mr. Gagniuk could not remember whether or not he cross-examined witnesses and he did not recall his closing argument; he could only testify about what he would typically do when representing a criminal defendant. (*Id.,* PageID.2661, 2663, 2685-86). Gagniuk subsequently stated that silence can sometimes be the best strategy, which is especially true "when there's two juries [as there was in this case]" because "if someone asked a question of the witness, I'm not going to repeat the same question." (*Id.*, PageID.2683).  Gagniuk testified that it was his strategy in cases involving co-counsel to "never do [cross-examination] twice" and that "[n]o one needs to hear me talk if you already heard the answer from someone else asking the question." (*Id.*, PageID.2686).   Gagniuk testified that he routinely discusses the decision to testify with his clients.  He also indicated that he discourages his clients to take the stand because "in 20 years of experience, I have only had one or two clients that really blew my hair back when they

testified[.]" (*Id.,* PageID.2687).   Gagniuk stated that if a client insists on testifying, he will not stop that. (*Id.,* PageID.2688).

Gagniuk did remember that petitioner maintained his innocence and that he had a jury trial. (*Id.*, PageID.2665).   Gagniuk did not testify that he consulted with petitioner about the strategy of conceding petitioner's guilt on the home invasion charge, nor did he testify to obtaining his consent to this strategy.   Gagniuk acknowledged that it would not be unusual for co-defendants to be given a choice that either both accept a plea bargain or both must go to trial. (*Id.*, PageID.2664). While he did not remember specifically what he was thinking during the trial, Gagniuk believed that his strategy was to concede the home invasion to the jury in the hopes of gaining an acquittal on the "more serious charges" -- the armed robbery and carjacking.   Gagniuk was familiar with the expression "a slow [guilty] plea," which is used in cases where a defendant is guilty but hopes to obtain a lesser charge or a lesser sentence by requesting a bench trial. Gagniuk agreed that that strategy would not apply here, because petitioner maintained his innocence, and because this was a jury trial – "you have to pay for the dance floor." (*Id.,* PageID.2664-2665).   Significantly, Mr. Gagniuk could not remember talking with petitioner about the issue of conceding petitioner's guilt to the home invasion charge at trial. (*Id*., PageID.2664).

Prior to trial, the plea offer was 171 months to 30 and it required petitioner to plead guilty to carjacking, home invasion, and conspiracy to commit home invasion. (*Id.*, PageID.2662). Petitioner's actual sentence, following the jury trial, was 217 months plus 87 months (304 months or twenty five years, four months) to 40 years. (*Id.*, PageID.2663).

Subsequent to the hearing, petitioner's counsel filed a memorandum of law (ECF No. 47) and an amended petition. (ECF No. 50).  This Court granted the motion to amend. (ECF No. 51).  Respondent filed responses to both pleadings. (ECF Nos. 48, 53).

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

Petitioner in his original and amended petitions seeks habeas relief on the following grounds: (1) petitioner was constructively denied the assistance of trial counsel, (2) petitioner's Fifth and Sixth Amendment rights were violated when the detective obtained a statement from petitioner after he had invoked his right to counsel and his right to silence, and (3) appellate counsel was ineffective for failing to raise these claims on petitioner's appeal of right.

### A. The procedural default issues.

Before addressing petitioner's underlying claims, this Court must address several procedural default issues that were raised by respondent in their various pleadings.

Respondent in their supplemental answer (ECF No. 53) to the second amended habeas petition (ECF No. 50) argues that petitioner's claim that Detective Hughes violated *Edwards v Arizona* by re-initiating the interrogation with petitioner after he invoked his right to counsel is unexhausted and now defaulted because petitioner never exhausted this claim and has no remaining state court remedies with which to do so.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion requirement requires that a federal habeas petitioner fairly present the substance of each federal constitutional claim to state courts using citations to the United States Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993).

Respondent acknowledges in their supplemental answer (ECF No. 53, PageID.2795) that petitioner first mentioned that Detective Hughes refused his request for an attorney and ignored petitioner's exercise of his right to remain silent in his *pro se* supplemental appeal brief that he submitted on his

14

direct appeal. (ECF No. 18-9, PageID.1159). Petitioner later raised this issue in an affidavit that he attached to a motion to remand for a *Ginther* hearing[2] that was filed before the Michigan Court of Appeals after the first remand of petitioner's case to the trial court for re-sentencing. (ECF No. 18-13, PageID.1876).

This admittedly would be insufficient for exhaustion purposes because petitioner never filed an application for leave to appeal to the Michigan Supreme Court. A Michigan petitioner must present each ground to both Michigan appellate courts before seeking federal habeas corpus relief. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Mohn v. Bock*, 208 F.Supp.2d 796, 800 (E.D.Mich.2002). Because petitioner failed to raise any *Edwards* claim before the Michigan Supreme Court, it was not exhausted on petitioner's direct appeal. *See, e.g., Rupert v. Berghuis,* 619 F. Supp. 2d 363, 367 (W.D. Mich. 2008).

Petitioner, however, did allege in his post-conviction appeal to the Michigan Supreme Court that counsel was ineffective for failing to move to suppress petitioner's confession because amongst other things, petitioner had invoked his right to counsel and his right to remain silent. (ECF No. 18-17, PageID.2303).

---

[2] *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

"[G]iven the less stringent standards and active interpretation that are afforded to the filings of pro se litigants," *See Caver v. Straub,* 349 F.3d 340, 347 (6th Cir. 2003), this Court believes that petitioner "made a reasonable attempt" to fairly present his *Edwards* claim and the related ineffective assistance of counsel claims to the state courts, first by raising it on his direct appeal in his *pro se* brief and motion to remand, and later in his post-conviction appeal before the Michigan Supreme Court. *Id.* at 347 (holding that petitioner sufficiently exhausted claim by raising it *pro se* in his application for leave to appeal before the Michigan Supreme Court, even though the claim had not been raised before the Michigan Court of Appeals).

Respondent further urges this Court to procedurally default all of petitioner's claims because petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise them on his appeal of right.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an

extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant post-conviction relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

The Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Rush*, 505 Mich. 1040, 941 N.W.2d 663 (2020).  The Michigan Court of Appeals denied petitioner's post-conviction appeal in a form order "because the defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Rush,* No. 349890 (Mich. Ct. App. Sept. 23, 2019)(ECF No. 18-16, PageID.2212).  These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise his

17

claims on his direct appeal as their rationale for rejecting his post-conviction appeals. Because the form orders in this case are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

The trial judge, in denying the post-conviction motion for relief, indicated that petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise his claims on his appeal of right. *People v. Rush,* No. 12-001081-FC, \*9 (Wayne County Circuit Court Feb. 4, 2019)(ECF No. 18-16, PageID.2260). The trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3); Petitioner's claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007). The fact that the trial judge may have also discussed the merits of petitioner's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject petitioner's claims does not alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). Petitioner's claims are procedurally defaulted.

18

Petitioner argues that appellate counsel was ineffective. Ineffective assistance of counsel may establish cause for procedural default of his claims. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Petitioner could not procedurally default his ineffective assistance of appellate counsel claim because post-conviction review was the first opportunity he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d at 291. If petitioner can show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his claims on his direct appeal in the state courts. *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000).

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). A defendant must satisfy a two prong test to show that he was denied the effective assistance of counsel. First, the defendant must demonstrate that counsel's performance was so deficient that the attorney did not function as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. The defendant must overcome the presumption that, under the circumstances,

19

the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. A defendant demonstrates prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. See *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

In assessing whether a claim of ineffective assistance of counsel satisfies the "cause" requirement of *Coleman*, a less stringent standard of review is applied than when reviewing an independent freestanding ineffective assistance of counsel claim pursuant to the deferential standard of review found in 28 U.S.C. § 2254(d). The question for the federal habeas court is not whether the state court's decision was unreasonable, but whether there was an independent Sixth Amendment violation under *Strickland*. Stated differently, the level of scrutiny of the ineffective assistance of counsel claim is the same as would be applied on direct review. *See Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."

*United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel, however, may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

This Court concludes that petitioner's ineffective assistance of trial counsel claims are meritorious and provide a basis for granting petitioner habeas relief. These claims were clearly stronger than the single sentencing issue raised by appellate counsel on petitioner's appeal of right. Petitioner's claims were clearly dead-bang winners because the errors were obvious from the record and "leaped out upon even a casual reading of the transcript." *Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987).

Petitioner has established cause and prejudice to excuse his default.

**B. The claims.**

Petitioner argues that he was constructively denied the assistance of trial counsel because his counsel: (1) failed to challenge the voluntariness of petitioner's confession, (2) waived the preliminary examination, (3) failed to

cross-examine a single prosecution witness, (4) conceded petitioner's guilt on the home invasion charge, and (5) failed to allow petitioner to testify on his own behalf.

Petitioner raised his constructive denial of counsel claim in his post-conviction motion for relief from judgment. As this Court indicated in its opinion granting petitioner an evidentiary hearing, the judge failed to address petitioner's constructive denial of counsel claim. *Rush v. Winn*, 2021 WL 1904498, at *3.

When a state court fails to adjudicate a habeas petitioner's claim on the merits, a federal court is required to review that claim *de novo. See Cone v. Bell,* 556 U.S. 449, 472 (2009); *see also McKenzie v. Smith,* 326 F.3d 721, 726 (6th Cir. 2003).  Petitioner raised his constructive denial of counsel claim and his related ineffective assistance of appellate counsel claim in his motion for relief from judgment.  The Michigan appellate courts rejected petitioner's post-conviction appeal with form orders. In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010)(quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005).  This Court must therefore look to the Wayne County Circuit Court judge's opinion denying post-conviction relief.

22

In rejecting the motion, the trial court judge failed to address petitioner's claim that he was constructively denied the assistance of trial counsel, choosing instead to adjudicate petitioner's claims under the *Strickland* standard.

When the evidence suggests that a federal claim is rejected by a state court "as a result of sheer inadvertence," the claim has not been adjudicated "on the merits," for purposes of applying the AEDPA's deferential standard of review contained in 28 U.S.C. § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 302-03 (2013). The trial judge, either "simply misconstrued or overlooked the actual claim that was raised." *Ray v. Bauman*, 326 F. Supp. 3d 445, 459 (E.D. Mich. 2018)(AEDPA deference did not apply to petitioner's constructive denial of counsel claim where the post-conviction judge overlooked or misconstrued petitioner's *Cronic* argument).   In this case, "there are simply no results, let alone reasoning, to which this court can defer. Without such results or reasoning, any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile." *McKenzie,* 326 F.3d at 727. Accordingly, petitioner's constructive denial of counsel claim would be subject to *de novo* review.

23

The Supreme Court has recognized that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland,* 466 U.S. at 692.  The "actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.  So are various kinds of state interference with counsel's assistance." *Id.*

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F.3d 851, 860 (6th Cir. 2002)(quoting *United States v. Cronic,* 466 U.S. 648, 659 (1984)). However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

The Supreme Court has described *Cronic* as creating only a "narrow exception" to the general rule in *Strickland* that "a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense." *Florida v. Nixon*, 543 U.S. 175, 190 (2004).

24

The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007)(citing *Bell*, 535 U.S. at 697). While this Court is sympathetic to petitioner's claims, the Court nonetheless rejects petitioner's claim that he was constructively denied counsel, so as to be entitled to *Cronic's* presumption of prejudice. Although counsel did not cross-examine the witnesses, he apparently refrained from doing so because the co-defendant's counsel questioned the witnesses. Counsel made opening and closing arguments. He filed a motion in limine prior to trial. He participated in voir dire. He moved for a directed verdict. Even reviewing petitioner's claim *de novo*, petitioner failed to show that he was constructively denied counsel. The Court believes that the *Strickland* standard is the applicable standard to review petitioner's ineffective assistance of counsel claims. In the present case, counsel's alleged failures do not amount to a complete failure to provide a defense. Therefore, the presumption of prejudice does not apply and petitioner would be required to show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief. *Id.* This Court however believes that petitioner has shown, under the

*Strickland* standard, that he was denied the effective assistance of trial and appellate counsel.

Petitioner first argues that trial counsel was ineffective for failing to move to suppress his confession to Detective Hughes on two grounds: (1) petitioner had invoked his right to counsel and his right to remain silent, but that Detective Hughes impermissibly re-initiated the interrogation of petitioner by placing petitioner's uncle Darnell Rush inside the same holding cell to induce a confession, and (2) the confession was involuntary because petitioner's uncle threatened physical violence against petitioner and also promised him probation if he confessed.

The Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985).  An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist. *Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (6th Cir. 1994)(citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)). An involuntary confession may result from psychological, no less than

26

physical, coercion or pressure by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991).

A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 444, 475 (1966).  Coercive police activity is a necessary predicate to finding that a defendant's waiver of his *Miranda* rights was involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167, 169-70 (1986).  A defendant's deficient mental condition, by itself, is insufficient to render a waiver involuntary. *Id.* at 164-65. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Connelly*, 479 U.S. at 165.

Likewise, in determining whether a confession is voluntary, the pertinent question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. at 112.  These circumstances include:

1. police coercion (a "crucial element");
2. the length of interrogation;
3. the location of interrogation;
4. the continuity of the interrogation;
5. the suspect's maturity;
6. the suspect's education;
7. the suspect's physical condition and mental health;
8. and whether the suspect was advised of his *Miranda*

27

Rights.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors involved in a defendant making a statement to the police should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). However, a confession should not be deemed involuntary in the absence of coercive police activity. *Colorado v. Connelly,* 479 U.S. at 167.

Petitioner initially appears to argue that the statement should have been suppressed because petitioner invoked his right to counsel.

Once an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

The rule in *Edwards* is considered "a corollary to *Miranda's* admonition that '[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present.'" *Arizona v. Roberson*, 486 U.S. 675, 680 (1988)(quoting *Miranda,* 384 U.S. at 474). The rationale behind *Edwards* is that once the accused informs law enforcement officials "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling

28

pressures' and not the purely voluntary choice of the suspect." *Maryland v. Shatzer*, 559 U.S. 98, 104-05 (2010)(quoting *Roberson*, 486 U.S. at 681). Indeed, "to a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." *Roberson,* 486 U.S. at 686.

Petitioner testified at the evidentiary hearing that he invoked his right to counsel during the initial interrogation with Detective Hughes.  Instead of respecting his request for an attorney, Detective Hughes brought petitioner's uncle, Darnell Rush, into the interrogation room, ordered him to "get your nephew talking" and left him alone with petitioner.  When the detective and Darnell Rush entered the room petitioner said, "Look, I don't know what you want or what you trying to do, but I'm not trying to talk to neither one of y'all." Petitioner testified that after Detective Hughes left the interrogation room, Darnell was very "hyped up", and he threatened to "beat the shit" out of petitioner if he "didn't start telling these people what they want to hear ..." Darnell told petitioner that if they both admitted to the home invasion, Darnell would be the beneficiary of a deal with the prosecutors.  If not, Darnell would be serving "25 years to life" because he had a serious criminal history which

included a prior conviction for armed robbery. In addition to threatening petitioner, Darnell promised petitioner that he would only get probation because home invasion "ain't nothin but a little minor offense."  Petitioner testified that he believed his uncle because petitioner received probation after pleading to a home invasion in the past. (ECF No. 46, PageID.2708-2711).  Petitioner testified that he signed and initialed a statement about the home invasion not because it was true, but because of what Darnell Rush had said and done to him.  Petitioner claimed that he did not read the statement before signing it, and that he did not really know what the statement said until he read a transcript of Detective Hughes' testimony after his trial.  At trial, Detective Hughes did not deny that he sent Darnell Rush into a room alone with petitioner to get him to talk.  Neither Detective Hughes nor Darnell Rush testified at the evidentiary hearing before this Court.

Petitioner testified that he first met his assigned counsel, Brian Gagniuk on the date set for the preliminary examination.  Petitioner informed Gagniuk about the circumstances that led to him giving a statement. (*Id.*, PageID.2714). Gagniuk promised petitioner that "he could get it [the statement] thrown out", and that he would "check into it."  By the next court date, Gagniuk told petitioner "[w]ell, they're not going to suppress" the

statement. (*Id.*, PageID.2716-2717).  Petitioner told his attorney that he was innocent of these crimes.

At the evidentiary hearing, Mr. Gagniuk could not recall any specific discussions with petitioner about the motions petitioner wanted him to file or about the circumstances surrounding the interrogation. At trial, Gagniuk actually stipulated that petitioner's confession was voluntary. (ECF No. 18-4, PageID.800).

This Court finds that petitioner was credible regarding the circumstances of the interrogation, his discussions with trial counsel concerning the involuntariness of the waiver of his *Miranda* rights and that his confession was coerced, and his desire to have counsel move to suppress the confession.  "It is the province of the district court before which a habeas corpus proceeding is taking place to make credibility determinations." *Satterlee v. Wolfenbarger*, 374 F. Supp. 2d 562, 568 (E.D. Mich. 2005), *aff'd*, 453 F.3d 362 (6th Cir. 2006)(citing *Stidham v. Wingo*, 482 F.2d 817, 820 (6th Cir. 1973)).  This Court finds petitioner's testimony on this issue more credible than Mr. Gagniuk's, because counsel was unable to remember any details surrounding the interrogation or the discussions with petitioner about whether to file a motion to suppress. *Id.*

More importantly, respondent failed to call any other witnesses to rebut petitioner's testimony.  Detective Hughes was not called to testify, nor was Darnell Rush.  Although respondent notes that Detective Hughes testified at trial that petitioner did not ask for an attorney, Hughes was never cross-examined by trial counsel about the circumstances surrounding petitioner's request for an attorney or the circumstances surrounding the interrogation. More importantly, this Court did not hear from Detective Hughes and is unable to judge his credibility.

Under Michigan law, a confession that is found to be coerced and involuntarily made to a private citizen is not admissible in evidence in a criminal trial. *People v. Switzer*, 135 Mich. App. 779, 784, 355 N.W.2d 670 (1984); *see also People v. Seymour*, 188 Mich. App. 480, 483, 470 N.W.2d 428, 430 (1991).  In *Switzer,* the Michigan Court of Appeals held that the defendant's confession of guilt to a cousin of an infant killed by the defendant was coerced and inadmissible when the cousin told the defendant that he "was going to knock the hell" out of defendant and struck the victim twice in the face with his fist. *Id.,* at 782-84.  The Michigan Court of Appeals in *Switzer* relied on an earlier Michigan Supreme Court case:

> The same conclusion may be drawn from our Supreme Court's decision in *People v. Rich*, 133 Mich. 14, 94 N.W. 375 (1903). In that case, the defendant made certain inculpatory statements after having been threatened by the father of a rape victim. At the

32

time of the *Rich* trial, a jury was allowed to decide the issue of the voluntariness of an admission or confession. The Supreme Court approved an instruction to the jury that a coerced confession made under duress or restraint was an exception to the rule that an admission was strong evidence of guilt. Michigan has adopted a rule requiring the judge to decide questions of voluntariness outside the presence of the jury. *People v. Walker* (On Rehearing), 374 Mich. 331, 132 N.W.2d 87 (1965). We therefore conclude that a confession found to be coerced and involuntarily made is not admissible in evidence in a criminal trial, even if the state is not involved in the coercion.

*People v. Switzer*, 135 Mich. App. at 784–85.

This is precisely what happened in this case. Petitioner's uncle threatened to physically assault petitioner if he did not confess to Detective Hughes.  Petitioner believed that this threat was credible because his uncle was a man "prone to violence." Under Michigan law, this threat rendered petitioner's confession involuntary.

Making matters worse, petitioner's uncle also promised petitioner that he would get probation if he confessed.  A confession, in order to be deemed voluntary, cannot be the result of any direct or implied promises, however slight. *See Shotwell Mfg. Co. v. U.S.,* 371 U.S. 341, 347 (1963). Police promises of leniency and threats of prosecution can be objectively coercive, as required for a finding that a confession was involuntary due to police coercion. *United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003).

In the present case, petitioner informed Detective Hughes that he wanted to speak to an attorney and exercised his right to remain silent. Rather than honoring that request, Detective Hughes sent petitioner's uncle into the interrogation room to instigate petitioner into giving up his *Miranda* rights and speak with petitioner.  Detective Hughes told Darnell to "get his nephew talking."  Once inside the interrogation room, Darnell threatened to "beat the shit" out of petitioner if he did not speak with the police.  He also promised that petitioner would get probation if he confessed to the police. Petitioner testified before the Court that he did not voluntarily re-initiate discussions with Detective Hughes, but did so only because his uncle threatened to assault him and also promised him probation. Petitioner's uncle was acting as an agent for the police when he was sent into the interrogation room by Detective Hughes to force petitioner to give up his Fifth Amendment rights and confess.  Under the circumstances petitioner's waiver of his *Miranda* rights and his confession were involuntary.   Petitioner informed trial counsel that his confession was involuntary but counsel did not file a motion to suppress the confession.  Counsel was deficient for failing to move to suppress an obviously coerced confession. *See Hicks v. Hepp*, 871 F.3d 513, 528 (7th Cir. 2017).  In *Hicks*, the Seventh Circuit found that the state appellate court unreasonably concluded that victim's threats toward

petitioner were not coercive and that petitioner's confession to sexually molesting the victim, made during a phone call with victim in which victim was acting as a police agent, was voluntary.  The Seventh Circuit found unreasonable the state court's conclusion that petitioner's trial counsel's decision not to challenge admissibility of the confession during trial was a permissible trial strategy, for purpose of petitioner's claim for federal habeas relief.  In determining whether petitioner's confession was voluntary, the Seventh Circuit found that the state court's findings were unreasonable when the state court concluded that the attorney's testimony at the hearing on petitioner's ineffective assistance claim, that petitioner did not feel threatened by victim, was more credible than petitioner's testimony and statements to others that he did feel threatened.  The Seventh Circuit noted that the attorney's testimony at the hearing was patently false because there were readily verifiable facts in the transcript regarding his role during the trial.

Compounding counsel's error was the fact that trial counsel did not ask Detective Hughes any questions at the trial, specifically about the interrogation.  Although an attorney's decision to challenge the voluntariness of the statement mid-trial rather than in a pre-trial motion is a reasonable trial strategy, *see e.g., Garcia-Dorantes v. Warren,* 769 F. Supp. 2d 1092, 1106 (E.D. Mich. 2011), counsel did not do that here at trial.

35

Petitioner was also prejudiced by counsel's failure to move to suppress the confession.  The main evidence against petitioner was Mr. Cannady, a co-defendant, who testified against him in exchange for a plea bargain.  This makes the co-defendant's testimony somewhat suspect, as he had a motive to lie in order to obtain leniency.  Although there is evidence that petitioner pawned some of the victim's stolen property, petitioner claims he did so at Mr. Robinson's request, not because he was involved in the robbery and home invasion.

The U.S. Supreme Court has repeatedly emphasized that confessions are like no other type of evidence and they are likely "the most probative and damaging evidence that can be admitted against a criminal defendant, so damaging that a jury should not be expected to ignore it even if told to do so." *Arizona v. Fulminante,* 499 U.S. 279, 296 (1991); *Bruton v. United States*, 391 U.S. 123, 139 (1968)(White, J. dissenting)). A defendant's confession, unlike statements concerning only isolated aspects of a crime, "may tempt the jury to rely upon that evidence alone in reaching its decision." *Fulminante*, 499 U.S. at 296.

In light of the fact that the evidence in this case was not strong, as well as the fact that there is a significant likelihood that the confession would have been suppressed had a motion to suppress been filed, trial counsel was

ineffective for failing to file a motion to challenge the admissibility of petitioner's confession.

Likewise, appellate counsel was ineffective for failing to raise on petitioner's direct appeal a claim that trial counsel was ineffective for failing to move to suppress the confession for several reasons.

First, Detective Hughes testified at trial that when he was unable to get petitioner to cooperate, he brought petitioner's uncle into the interrogation room and left him alone with petitioner for about ten minutes. Detective Hughes admitted to getting a statement from petitioner after petitioner had spoken with his uncle. (ECF No. 18-4, PageID.796-800). Detective Hughes indicated that he previously employed the same procedure against Darnell Rush, when he sent co-defendant Cannady into the interrogation room with Darnell Rush to get him to cooperate with the police. (*Id.*, PageID.776-78). The record alone should have alerted appellate counsel to at least investigate the circumstances surrounding the interactions between petitioner and his uncle and whether petitioner's uncle was acting as an agent for the police.

Secondly, as mentioned above, petitioner first mentioned that Detective Hughes ignored his right to remain silent in his *pro se* supplemental appeal brief that he submitted on his direct appeal with appellate counsel's

37

brief. (ECF No. 18-9, PageID.1159).  Petitioner later raised this issue in an affidavit that he attached to a motion to remand for a *Ginther* hearing, that was filed before the Michigan Court of Appeals after the first remand of petitioner's case to the trial court for re-sentencing. (ECF No. 18-13, PageID.1876). Appellate counsel should have been aware at several stages of petitioner's direct appeals process of petitioner's claim that his confession was involuntary and obtained in violation of *Miranda,* as well as his related claim that trial counsel was ineffective for failing to challenge the confession.

Finally, as petitioner explains in his affidavit (ECF No. 1, PageID.29-30), he advised appellate counsel that his confession had been coerced, that trial counsel had been ineffective, and asked that counsel raise these issues on appeal; but appellate counsel only raised a single sentencing issue.

Although petitioner had a different appellate attorneys for each of his three appeals before the Michigan Court of Appeals on direct review, each of the appellate attorneys, for the reasons mentioned above, should have been aware that the confession had been coerced and obtained in violation of petitioner's rights under *Edwards,* and that trial counsel had been ineffective for failing to challenge the admissibility of the confession.

Based on the foregoing, this Court concludes that trial counsel was ineffective for failing to challenge petitioner's confession and appellate

counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel at any stages of petitioner's appeal of right.

This Court further concludes that trial counsel was ineffective for conceding petitioner's guilt to the home invasion charge.

Although it may be a legitimate trial strategy for defense counsel to concede a defendant's guilt to at least some of the charges, courts insist that the strategy only be used after defense counsel consults with the client. *Florida v. Nixon*, 543 U.S. 175, 187 (2004). A defense counsel's failure to consult with his client prior to a concession of guilt by counsel warrants habeas relief because an uncounseled concession "nullifie[s] the adversarial quality of [a] fundamental issue." *Wiley v. Sowders*, 647 F.2d 642, 650 (6th Cir. 1981).

There was no evidence presented that defense counsel consulted with petitioner about the strategy to concede guilt to the lesser offense of home invasion. Mr. Gagniuk, in fact, could not recall whether he discussed the issue of conceding guilt to a lesser offense with petitioner. Petitioner denied authorizing counsel to concede his guilt to this offense. Absent any evidence to the contrary, petitioner is entitled to relief on his claim that trial counsel was ineffective for conceding guilt to the home invasion charge. Petitioner's claim that he did not wish to have counsel concede his guilt to the home

39

invasion charge is buttressed not only by his continued assertions of innocence and instance of having a jury trial, but also by virtue of the fact that petitioner had previously rejected a plea bargain offer that would have resulted in a sentence of 171-360 months. Counsel's trial strategy led to petitioner receiving a cumulative sentence of 304 months (217 months + 87 months) to 960 months (40 years + 40 years)(ECF No. 18-6, PageID.1017).[3] Petitioner had the opportunity to concede guilt, yet rejected the plea offer. Petitioner is entitled to habeas relief on this claim as well.

Moreover, this Court also concludes that appellate counsel was ineffective for failing to raise this claim on petitioner's appeal of right, as this issue should have been apparent from the trial court record.

Therefore, the Court grants the writ of habeas corpus and vacates the convictions.  The Court orders the State of Michigan to either (1) set a new trial date that is within ninety days of entry of this order, which is to be conducted in accordance with the conditions stated in this opinion, or (2) release petitioner unconditionally. *See Mathis v. Berghuis*, 202 F.Supp.2d 715, 725 (E.D. Mich. 2002).  Because the Court's conclusion that petitioner is entitled to habeas relief is dispositive of the petition, the Court considers it

---

[3] Petitioner was later resentenced and the third habitual offender enhancement was removed.

unnecessary to review petitioner's other claims and declines to do so. *Haynes v. Burke*, 115 F. Supp. 2d 813, 819-20 (E.D. Mich. 2000).

### IV.  Conclusion

**IT IS ORDERED** that

(1)   Petitioner Darius Rush's original and amended petitions for a writ of habeas corpus are **CONDITIONALLY GRANTED.**

(2)   Petitioner's convictions are **VACATED.**

(3)   Petitioner's Request for Evidentiary Hearing Transcripts (ECF No. 54) is **DENIED** without prejudice to his current counsel requesting such from the appropriate court reporter.

(4)   Petitioner's Motion to Compel Discovery from his counsel (ECF No. 55) is **DENIED**.

(5)    Petitioner's Notice of Self-Representation and request to represent himself (ECF No. 56) is **DENIED** without prejudice in light of this Court's ruling.

(6)  Unless the Respondent/State takes action to afford petitioner a new trial within **ninety (90) days** of the date of this opinion, *OR* if appealed, the date when any appellate review in favor of Petitioner becomes final, whichever date is later, Respondent is ORDERED to release Petitioner from custody immediately after

these dates have passed.  Petitioner may immediately file for a

writ after these dates have passed if Respondent fails to follow

this Order.



Dated:  July 31, 2023

s/Denise Page Hood
Denise Page Hood
United States District Judge